IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

JUL 11 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

PATRICIA A. WETH          )
                          )
          Plaintiff,      )
                          )
     v.                   )          1:10cv1353 (LMB/TCB)
                          )
FRANCIS X. O'LEARY, *individually* )
*and as Arlington County Treasurer,* )
                          )
          Defendant.      )

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary
judgment. For the reasons stated in open court and in this
Memorandum Opinion, the Motion for Summary Judgment by Francis X.
O'Leary, in his official capacity as Arlington County Treasurer,
will be granted. Defendant's Motion for Summary Judgment in his
individual capacity will be granted in part and denied in part,
and plaintiff's Motion for Partial Summary Judgment will be
denied.

## I. Background

This civil action is an employment discrimination action
brought by plaintiff Patricia A. Weth ("Weth") against Francis X.
O'Leary ("O'Leary"), the Treasurer of Arlington County ("the
County"). Weth was employed from January 2004 to February 16,
2010 as the Deputy Treasurer for Litigation for the Arlington
County Treasurer. In that position, Weth's specific job duties
included, <u>inter alia</u>, supporting the Compliance Division with the
collection of County taxes, working on federal legislation to

allow Arlington County to intercept federal tax refunds of
delinquent County taxpayers, making and proposing changes to the
Virginia Code and local ordinances on tax issues affecting the
County, reviewing contracts, teaching other treasurer's offices
throughout the Commonwealth of Virginia about best practices,
preparing and maintaining an operations plan for the office in the
event of an emergency, and raising funds to help publish a
compendium book on taxes prepared by her predecessor. See Pl.'s
Mot. for Partial Summ. J. at Ex. 1 (Def.'s Dep.); see also id. at
Ex. 2 (Patricia Weth Project List).

Weth alleges that she performed all of those duties
satisfactorily throughout her tenure as the Deputy Treasurer for
Litigation, but that she was terminated from her position in
February 2010 in retaliation for taking medical leave.
Specifically, Weth was diagnosed with ovarian and uterine cancer
in September 2009. See id. at Ex. 3 (Pl.'s Resps. to Interrogs.).
O'Leary, her supervisor, learned of her illness in either late
September 2009 or at some point in October 2009. Id. at Ex. 1
(Def.'s Dep.) at 178:21-179:3, 185:1-6. On December 11, 2009,
Weth sent e-mails to O'Leary, his Chief Deputy Treasurer, and the
County's Human Resources Department, indicating that she was
scheduled for surgery on January 15, 2010 and would need to be out
on medical leave from that date until February 15, 2010. See id.
at Exs. 4-6 (Dec. 2009 e-mails). Plaintiff attached the County's
Family and Medical Leave Act ("FMLA") leave form to her e-mails

2

for defendant to sign, see id. at Ex. 4; defendant confirmed that he received the form, but he acknowledged during his deposition that neither he nor his Chief Deputy Treasurer signed it. Id. at Ex. 1 (Def.'s Dep.) at 187:19-188:2, 190:7-16.[1]

Three days later, on December 14, 2009, plaintiff had an emergency appointment with her endocrinologist due to severe pain in her pelvic region. See id. at Ex. 3. During that appointment, a CAT scan revealed that her condition was more serious than was previously thought and that she had a large mass on her left ovary; her surgery was accordingly moved up to December 22, 2009. Id. On December 17, 2009, Weth informed O'Leary and his Chief Deputy Treasurer of the need for immediate surgery, and stated that she would need to be out on leave at least until February 1, 2010, and possibly even longer if there were any complications with her surgery or treatment. Id. at Ex. 7 (Dec. 17, 2009 e-mail). Plaintiff then took leave on December 21, 2009, and underwent surgery the next day. Id.

Weth returned from medical leave on Tuesday, February 16, 2010. See id. at Ex. 1 (Def.'s Dep.) at 195:4-10, 224:6-8. On that same day, she met with defendant O'Leary, who told her that

---

[1] O'Leary testified that plaintiff "didn't have to provide us with paperwork" concerning FMLA leave because he was told that Weth "had more than adequate leave balances [accrued sick and vacation leave] to see her through" her requested leave. Id. (Def.'s Dep.) at 187:14-22, 193:10-15. Additionally, defendant argues that the FMLA leave form that Weth submitted was incomplete because it did not have a proper physician's statement appended to it. See Def.'s Br. in Supp. of Mot. for Summ. J. [Dkt. No. 52] at ¶ 76 (citing id. at Ex. D).

she needed to begin looking for a new job immediately. Id. at 226:19-20 (admitting that he told Weth "I want you just to go find a new job and tell me you found a new job and part our ways"); id. at 227:10-14 (telling plaintiff to "focus on getting a new job; that should be your immediate priority"). In fact, O'Leary stripped Weth of almost all of the job responsibilities of Deputy Treasurer for Litigation on February 16, telling her that, from then on, "her only job was to find a job." See id. at Ex. 9 (defendant's response to Request for Admission No. 40); see also id. at Ex. 1 (Def.'s Dep.) at 230:2-7 ("Q: Well, did you communicate to her on February 16, that aside from looking for a new job and aside from doing work in the Wayne Parks' matter, that she's no longer to perform the duties of deputy treasurer? A: I did."). One month later, on March 16, 2010, O'Leary suspended plaintiff and sent her home, reiterating that she was being relieved of her job duties and that her only responsibility was to find other employment. Id. at 238:10-13. However, Weth continued to receive her paycheck during that time period, and she was not officially discharged until July 2, 2010. Id. at 245:13-15.

The stated reason for Weth's termination was performance-related, and O'Leary specifically claims that he had a number of legitimate grievances relating to plaintiff's job performance, including her unavailability to provide legal advice at certain times, the fact that she kept her office door closed too often, and her alleged failures to complete several tasks or projects as

4

O'Leary wished or directed. See Br. in Supp. of Def.'s Mot. for Summ. J. [Dkt. No. 52] at ¶¶ 8-73. Plaintiff, however, alleges that she was terminated because she exercised her right to take medical leave, and that in fact she was effectively terminated - or at the very least demoted, by having her job duties eliminated - on the very same day that she returned from that medical leave. Weth thus asserts claims for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and intentional infliction of emotional distress. See Pl.'s Amend. Compl. ¶¶ 78-108.

Weth filed her original Complaint on December 1, 2010, naming O'Leary, Arlington County, and the Arlington County Treasurer's Office as defendants. See Dkt. No. 1. However, under the Virginia Constitution, County Treasurers like O'Leary are considered independent constitutional officers of the Commonwealth of Virginia, despite being elected by the citizens of Arlington County. See Va. Const., Art. VII § 4. The Court therefore found that Arlington County and the non-existent entity of the "Arlington County Treasurer's Office" were not proper defendants, and dismissed them with prejudice by an Order dated January 28, 2011. See Dkt. No. 29. Weth then filed an Amended Complaint on February 7, 2011, naming O'Leary as a defendant in both his official and individual capacities. See Dkt. No. 32 (Pl.'s Amend. Compl.) at 1 (naming both "Francis X. O'Leary" and "Francis X. O'Leary, Arlington County Treasurer" as defendants in the case caption).

5

On May 25, 2011, the parties filed cross-motions for summary judgment.  Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 47] seeks summary judgment in her favor on that aspect of her FMLA claim which alleges that defendant failed to restore her to her same position, with the same job duties and responsibilities, upon her return from FMLA leave.  Defendant O'Leary has also filed two Motions for Summary Judgment, one in his official capacity [Dkt. No. 49] and the other in his individual capacity [Dkt. No. 51].  Defendant's motions raise several threshold issues relating to state sovereign immunity and the proper interpretation of the FMLA's definition of "employer," along with several interrelated arguments for summary judgment on the merits.

## II.  Standard of Review

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).  The Court must view the record in the light most favorable to the nonmoving party, and must draw all inferences in favor of that party.  See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  However, "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the
[nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd.
v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008).

## III. Discussion

For the reasons discussed below, the Motion for Summary
Judgment filed by defendant O'Leary in his official capacity as
Arlington County Treasurer will be granted because: (1) as a state
constitutional officer, O'Leary is entitled to sovereign immunity
and cannot be sued in his official capacity for damages; and (2)
the Ex parte Young exception allowing suits for injunctive relief
against state officials acting in their official capacities does
not apply here.  The Motion for Summary Judgment filed by O'Leary
in his individual capacity will be granted in part as to Count II,
alleging intentional infliction of emotional distress, because no
reasonable fact-finder could find in plaintiff's favor on that
claim.  The remaining cross-motions for summary judgment by the
parties will be denied, and Weth's FMLA claims will proceed to
trial because there are genuine issues of material fact as to the
reasons for plaintiff's demotion and termination, and those
factual disputes can only be resolved at trial.

### A. Motion for Summary Judgment by Defendant Francis O'Leary, Arlington County Treasurer [Dkt. No. 49]

By filing her Amended Complaint against two separate
defendants ("Francis X. O'Leary" and "Francis X. O'Leary,
Arlington County Treasurer"), Weth clearly intended to bring

7

claims against O'Leary in both his official and individual capacities. It is a matter of black-letter law, however, that suits against governmental officials in their official capacities are considered suits against the government, not the individual officials themselves. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, it is equally well established that states, state officials, and other state governmental defendants are entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution. See Hans v. Louisiana, 134 U.S. 1 (1890).

In this case, O'Leary, as Arlington County Treasurer, has been designated a constitutional officer of the Commonwealth of Virginia. See Va. Const., Art. VII § 4. He therefore qualifies for the protection of state sovereign immunity and cannot be sued in his official capacity for damages. See Blankenship v. Warren Cnty., Va., 918 F. Supp. 970, 974 n.4 (W.D. Va. 1996) (holding that "it would be the incredible argument indeed that these officers [including Treasurers] are not state actors and are therefore not entitled to immunity pursuant to the Eleventh Amendment").[2]

_____

[2] Although Congress may abrogate Eleventh Amendment immunity and allow suits against state defendants for monetary damages, the Fourth Circuit has held that it has only validly done so for FMLA claims when the employee takes medical leave to care for a family member, not for "self-care" claims such as those raised by Weth, where the leave is taken to address the employee's own medical problems. See Coleman v. Md. Court of Appeals, 626 F.3d 187 (4th Cir. 2010) (citing and distinguishing

Plaintiff argues for the application of the Ex parte Young exception to sovereign immunity, which allows for prospective injunctive relief against state officials acting in their official capacities for ongoing violations of the law. See Ex parte Young, 209 U.S. 123 (1908). The Amended Complaint in this case does seek injunctive relief in the form of reinstatement, see Dkt. No. 32 (Pl.'s Amend. Compl.) at 16-17, and the Fourth Circuit has held that the Ex parte Young doctrine can, in some circumstances, be applied to reinstatement claims in employment lawsuits, see, e.g., Coakley v. Welch, 877 F.2d 304, 307 n.2 (4th Cir. 1989).

This case, however, does not present a proper occasion for the application of the Ex parte Young doctrine because the particular nature of the relationship between Weth and O'Leary precludes the equitable relief of reinstatement. Specifically, Weth worked for O'Leary as an appointed political deputy and as his attorney. Awarding the equitable relief of reinstatement would therefore effectively impose an attorney on an unwilling client, an outcome that courts are understandably reluctant to allow. See, e.g., Miller v. Lakin Law Firm PC, No. 09-cv-101-JPG, 2010 WL1325182 (S.D. Ill. Mar. 30, 2010). Moreover, the animosity between Weth and O'Leary would likely prevent the parties from ever working together in the sort of relationship of trust that is

_____

between 29 U.S.C.A. §§ 2612(a)(1)(A)-(C) and 29 U.S.C.A. § 2612(a)(1)(D)), cert. granted, No. 10-1016 (June 27, 2011).

required for a County Treasurer and his Deputy Treasurer. Those factors strongly counsel against entering an injunction requiring O'Leary to reinstate Weth in her former or an equivalent position. See Duke v. Uniroyal, Inc., 928 F.2d 1413 (4th Cir. 1991).

Finally, although plaintiff has argued that this matter is not ripe for resolution and that the Court should wait until after trial to determine whether equitable relief is appropriate, it is clear from the facts in this record that even if Weth were to prevail on her FMLA claims, an order of reinstatement would not be an appropriate remedy. Because reinstatement is the only exception to immunity under the Eleventh Amendment for plaintiff's suit against defendant in his official capacity, all claims against defendant "Francis X. O'Leary, Arlington County Treasurer" will be dismissed with prejudice.[3]

   **B. Cross-Motions for Summary Judgment by Plaintiff and Defendant O'Leary in his Individual Capacity [Dkt. Nos. 47 and 51]**

      ### 1. Intentional infliction of emotional distress claim (Count II)

Plaintiff asserts two types of claims against the remaining defendant, Francis X. O'Leary in his individual capacity: (1) federal claims for violations of the FMLA (Count I); and (2) a

---

[3] Weth has voluntarily withdrawn her claim for intentional infliction of emotional distress against O'Leary in his official capacity, but has indicated that she still intends to proceed on that claim against O'Leary in his individual capacity. See Pl.'s Opp. to Mot. for Summ. J. by Def. Francis X. O'Leary, Arlington County Treasurer [Dkt. No. 57] at 8.

state-law claim for intentional infliction of emotional distress
(Count II). For the reasons stated below, the intentional
infliction of emotional distress claim in Count II of plaintiff's
Amended Complaint will be dismissed with prejudice, and the Motion
for Summary Judgment filed by defendant O'Leary in his individual
capacity will therefore be granted in part.

Intentional infliction of emotional distress is a highly
disfavored claim in the Fourth Circuit; in fact, to state a viable
claim under that theory, a plaintiff must meet the high burden of
showing that: (1) the defendant's conduct was intentional or
reckless; (2) the conduct was outrageous or intolerable; (3) there
was a causal connection between the defendant's conduct and the
plaintiff's emotional distress; and (4) the resulting emotional
distress was severe. See, e.g., Adams v. High Purity Sys., Inc.,
No. 1:09cv354, 2009 U.S. Dist. LEXIS 80979, at *25 (E.D. Va. July
2, 2009) (Lee, J.), aff'd, 382 Fed. Appx. 269 (4th Cir. 2010).
Proof of merely "[i]nsensitive and demeaning conduct," without
more, is insufficient to support a cause of action for intentional
infliction of emotional distress. Harris v. Kreutzer, 271 Va.
188, 204 (2006). Rather, a defendant's conduct qualifies as
"outrageous or intolerable" only if it is so outrageous in
character, and so extreme in degree, as to go "beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized society." Id. (internal citations and

11

quotations omitted).

Here, plaintiff's evidence does not come close to meeting the threshold required for an intentional infliction of emotional distress claim. Although plaintiff was fired shortly after returning from medical leave, and quite understandably suffered some emotional distress as a result of that termination, she has not produced any evidence of comments or conduct by defendant O'Leary that would rise to the level of "outrageous," "atrocious," or "intolerable" behavior. In fact, O'Leary's decision to allow Weth to remain on the payroll for approximately four months, receiving her full salary and benefits, even after he relieved her of most or all of her job duties, bespeaks at least some level of concern for her well-being that would negate any claim for intentional or reckless infliction of emotional distress. Moreover, although Weth has argued that she suffered severe emotional anguish as a result of her termination, she was also obviously experiencing serious - and completely understandable - emotional difficulties during that same time period as a result of her diagnosis and treatment for cancer. Under these circumstances, no reasonable jury could find in favor of Weth on her intentional infliction of emotional distress claim, which will therefore be dismissed with prejudice.

### 2. FMLA claims (Count I)

The remaining allegations in Weth's Amended Complaint state claims for violation of the FMLA. Both parties have filed motions seeking summary judgment in their favor, in whole or in part, on those FMLA claims. See Dkt. Nos. 47 and 51. Those cross-motions will be denied, and plaintiff's FMLA allegations will proceed to trial.

#### i. Threshold arguments

In his Motion for Summary Judgment in his individual capacity, defendant O'Leary first argues that he should somehow be entitled to sovereign immunity even when sued in his individual capacity because his official title as Arlington County Treasurer is an independent state constitutional office. That argument, however, is nonsensical, and flies in the face of basic sovereign immunity principles. A suit against a state, a state agency, or a state actor acting in his official capacity may be barred under the Eleventh Amendment, but courts have never held that state officials are entitled to sovereign immunity when sued as *individuals*, in their purely personal and individual capacities. Indeed, courts routinely allow lawsuits under 42 U.S.C. § 1983 against public officials who would be entitled to immunity if sued in their official capacities, but who are not entitled to such immunity when sued individually for damages in their personal capacities. See Hafer v. Melo, 502 U.S. 21 (1991).

13

O'Leary next advances the argument that an FMLA suit against him in his individual capacity is not cognizable because the FMLA does not permit lawsuits against individual public officials. There is a substantial and growing division of authority within the federal judiciary as to whether individuals - and, in particular, individual public officials like O'Leary - qualify as "employer[s]" and hence are subject to suit for FMLA violations. The text of the FMLA itself provides that the term "employer":

（i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;[4]

(ii) includes -

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any "public agency," as defined in section 203(x) of this title; and

(iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). The statute then makes clear that "[f]or purposes of subparagraph A(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or

_____

[4] O'Leary meets this criterion because he admits that he has about 62 employees, whom he is responsible for hiring and firing. See Def.'s Br. in Supp. of Mot. for Summ. J. [Dkt. No. 52] ¶ 1. In any event, public agencies are considered to be covered employers for FMLA purposes regardless of the number of individuals they employ. See 29 U.S.C. § 2611(4)(A)(iii).

activity affecting commerce." Id. § 2611(4)(B). Moreover, 29 U.S.C. § 203(x), which is a provision of the Fair Labor Standards Act that is incorporated by reference into the FMLA via 29 U.S.C. § 2611(4)(A)(iii), defines a "public agency" as· "the Government of the United States; the government of a State or political subdivision thereof; an agency of the United States . . . , a State, or a political subdivision of a State; or any interstate governmental agency." 29 U.S.C. § 203(x).

A number of courts, including the Fifth and Eight Circuits, have concluded on the basis of those textual provisions that public agency officials, including state officials, can be sued in their individual capacities under the FMLA if they "act[], directly or indirectly, in the interest of an employer" (by, for example, exercising hiring and firing authority). See Modica v. Taylor, 465 F.3d 174, 184-87 (5th Cir. 2006); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002). Other courts, such as the Sixth and Eleventh Circuits, have concluded that FMLA suits against individual public officers are not cognizable. See Mitchell v. Chapman, 343 F.3d 811, 825-33 (6th Cir. 2003); Wascura v. Carver, 169 F.3d 683, 685-87 (11th Cir. 1999). In the Fourth Circuit, the matter remains an open question of law. See Jones v. Sternheimer, 387 Fed. Appx. 366, 368-69 (4th Cir. 2010) (recognizing that the issue is "an open question in this circuit" but "express[ing] no opinion as to the viability of [plaintiff's] claim"). Indeed, district courts within the Fourth Circuit have reached contrary

15

conclusions on the issue. Compare Cantley v. Simmons, 179 F. Supp. 2d 654, 657 (S.D. W. Va. 2002) and Knussman v. State of Md., 935 F. Supp. 659, 664 (D. Md. 1996) (allowing such claims) with Sadowski v. U.S. Postal Serv., 643 F. Supp. 2d 749 (D. Md. 2009) and Keene v. Rinaldi, 127 F. Supp. 2d 770 (M.D.N.C. 2000) (rejecting them). Nationwide, however, it appears that "the majority of district courts have concluded that public employee supervisors can be sued individually under the FMLA." Cantley, 179 F. Supp. 2d at 656; see also Kilvitis v. Cnty. of Luzerne, 52 F. Supp. 2d 403, 412-13 (M.D. Pa. 1999) (collecting cases).

This Court finds merit in the view taken by the majority of courts and holds that Weth's FMLA claim is cognizable against O'Leary. The FMLA statute plainly includes in the definition of "employer" "*any person* who acts, directly or indirectly, in the interest of an employer," thereby indicating that individual liability on the part of managers, supervisors, and other individual officers of a larger company or public agency is appropriate. 29 U.S.C. § 2611(4)(A)(ii)(I) (emphasis added). The definition of "employer" under the FMLA also closely parallels that in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the FMLA's implementing regulations provide that "[a]s under the FLSA, *individuals such as corporate officers* 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R. § 825.104(d) (2009) (emphasis added).

16

To be sure, the use of the language "corporate officers" as an illustrative example in 29 C.F.R. § 825.104(d) connotes employees of a private corporation, but the clause is introduced by the phrase "such as," and therefore plainly is non-exhaustive. Id. Furthermore, in light of the FMLA's explicit instruction that an "employer" can also "include[] any 'public agency,'" 29 U.S.C. § 2611(4)(A)(iii), there is no compelling reason to distinguish between individual officials in the public sector and those in the private sector when determining the scope of individual FMLA liability. See Darby, 287 F.3d at 681. Had Congress wished to draw a distinction between individual corporate officers and individual public officials in the FMLA, it easily could have done so. It did not. The most straightforward reading of the text therefore compels the conclusion that no such distinction was intended, and that public officials like O'Leary may be held personally liable under the FMLA for their actions taken in the interest of an employer to other employees of a public agency.

In reaching this conclusion, we explicitly reject the reasoning of those courts that have reached a contrary holding. That reasoning is based, in large part, on the structure of 29 U.S.C. § 2611(4)(A). In particular, courts finding that public officials cannot be held individually liable under the FMLA point to the fact that 29 U.S.C. § 2611(4)(A)(ii)(I) allows suits against persons acting "in the interest of an employer to any of the employees of such employer," while the next provision, 29

U.S.C. § 2611(4)(A)(iii), separately provides that the term "employer" "includes any 'public agency.'"  <u>See</u> 29 U.S.C. § 2611(4)(A).  Those courts then conclude that the two separate statutory provisions governing individual persons as employers and public agencies as employers must be mutually exclusive, meaning that individual employees of public agencies cannot qualify as FMLA employers, and individual FMLA liability therefore cannot attach to public officials.  <u>See, e.g.</u>, <u>Mitchell</u>, 343 F.3d at 829-30; <u>Keene</u>, 127 F. Supp. 2d at 778.

Congress's use of the conjunctive word "and," however, to connect the three "includes" clauses of the "employer" definition in the FMLA - 29 U.S.C. §§ 2611(4)(A)(ii), (A)(iii), and (A)(iv) - suggests that far from being mutually exclusive, the clauses are intended to build on one another, such that the term "employer" can *both* include a public agency, <u>see</u> 29 U.S.C. § 2611(4)(A)(iii), *and* include individuals who act, directly or indirectly, in the interest of an employer to the other employees of such a public agency, <u>see</u> 29 U.S.C. § 2611(4)(A)(ii)(I).  After all, as the Fifth Circuit explained in <u>Modica</u>, "Congress's use of the word 'and' following clause (iii) suggests that there is some relationship between clauses (i)-(iv)."  465 F.3d at 185.  Moreover, "the grammatical structure of paragraph 4(A) suggests that each of the subparagraphs modifies the term employer," such that those subparagraphs can all be viewed as interconnected.  <u>Morrow v. Putnam</u>, 142 F. Supp. 2d 1271, 1273 (D. Nev. 2001).

Consequently, a plain reading of the statute indicates that public employees who act directly or indirectly in the interests of their public agency employers may themselves be considered "employers" subject to suit under the FMLA. <u>See, e.g.</u>, <u>Cantley</u>, 179 F. Supp. 2d at 657. In other words, borrowing simultaneously from 29 U.S.C. § 2611(4)(A)'(ii)(I) and 29 U.S.C. § 2611(4)(A)(iii) - as the conjunctive structure of 29 U.S.C. § 2611(4)(A) allows - yields the inescapable conclusion that public officials with hiring and firing authority, like defendant O'Leary, can be held individually liable for violations of the FMLA. Indeed, any other interpretation of the statute would run directly counter to its text. This Court is required to construe acts of Congress to mean what they say, and what the FMLA says is that public agencies are included within the definition of "employer," as are persons who act in the interest of an employer to any of the other employees of such an employer. <u>See</u> 29 U.S.C. §§ 2611(4)(A)(ii)(I) & (A)(iii). Read together, therefore, those two provisions make crystal clear that officials of public agencies, including defendant O'Leary, can be considered "employers" subject to suit in their individual capacities for violations of the FMLA.

### ii. *Merits arguments*

Having found that O'Leary is subject to suit in his individual capacity for alleged violations of the FMLA, we proceed to consider the merits of plaintiff's FMLA claims in Count I of her Amended Complaint. Both parties seek summary judgment on

those claims, with defendant O'Leary, acting in his individual capacity, seeking summary judgment on all aspects of Weth's claims, while Weth moves for summary judgment only as to one of her FMLA theories of liability.

Count I of plaintiff's Amended Complaint includes two distinct, but interrelated, claims for relief. Specifically, plaintiff asserts claims for "Retaliation and Interference with Rights Granted by the Family and Medical Leave Act," see Pl.'s Amend. Compl. at 12, thereby invoking the protections of both 29 U.S.C. § 2615(a)(2) and 29 U.S.C. § 2615(a)(1), respectively. Those provisions of the FMLA are designed to protect much the same employee interests, but despite certain conceptual similarities, the provisions also bear several important differences. FMLA claims under 29 U.S.C. § 2615(a)(1) are often alternatively referred to as "interference," "entitlement," or "restoration" claims, and they are grounded in an allegation that the defendant violated the FMLA by failing to restore the employee to the same position that he or she held before taking leave. See 29 U.S.C. § 2615(a)(1). Such interference claims must be distinguished from FMLA retaliation claims, which are brought under 29 U.S.C. § 2615(a)(2), the provision of the statute providing that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2).

Broadly speaking, therefore, the Fourth Circuit, along with other courts, has described the FMLA as including both prescriptive and proscriptive rights. See Yashenko v. Harrah's N.C. Casino Co., 446 F.3d 541, 546 (4th Cir. 2006). Prescriptive rights include the affirmative right to reinstatement upon return from FMLA leave, and an employee's "interference" or "entitlement" cause of action for violation of that prescriptive right is based upon 29 U.S.C. § 2615(a)(1). Id. By contrast, proscriptive rights are those that protect an employee "from discrimination or retaliation for exercising their substantive rights under the FMLA." Id. An employee's cause of action for violation of a proscriptive right is brought under 29 U.S.C. § 2615(a)(2), and is often referred to as a "retaliation" or "discrimination" claim. Id. Because plaintiff asserts both claims in her Amended Complaint, we consider each in turn.

### a. FMLA interference claim

Plaintiff moves for partial summary judgment on her interference theory of liability, arguing that there is no genuine issue of material fact that defendant violated 29 U.S.C. § 2614(a)(1). That provision of the FMLA provides that an employee who takes FMLA leave shall be entitled, on return from such leave:

   (A) to be restored by the employer to the position
       of employment held by the employee when the
       leave commenced; or

   (B) to be restored to an equivalent position with

> equivalent employment benefits, pay, and other
> terms and conditions of employment.

29 U.S.C. § 2614(a)(1)(A)-(B). The FMLA regulations define

"equivalent terms and conditions of employment" as those with

"substantially similar duties, conditions, responsibilities,

privileges, and status as the employee's original position," 29

C.F.R. § 825.215(e), and further define "equivalent position" as:

> one that is virtually identical to the employee's
> former position in terms of pay, benefits, and
> working conditions, including privileges,
> perquisites, and status. *It must involve the same or*
> *substantially similar duties and responsibilities,*
> which must entail substantially equivalent
> skill, effort, responsibility, and authority.

29 C.F.R. § 825.215(a) (emphasis added). Moreover, 29 U.S.C.

§ 2615(a) provides a mechanism for enforcing those statutorily

conferred rights, stating:

> (a)    Interference with Rights
>
>        1.  Exercise of rights
>
>        It shall be unlawful for any employer to interfere
>        with, restrain, or deny the exercise of or the
>        attempts to exercise, any right provided under
>        this subchapter.

29 U.S.C. § 2615(a)(1).

In this case, Weth has a very strong argument that defendant

O'Leary violated § 2614(a)(1) and is therefore liable for

interference with her FMLA rights under 29 U.S.C. § 2615(a)(1)

because, by his own admission, when Weth returned to work after

taking FMLA leave, O'Leary did not restore her to the same or an

equivalent position with equivalent terms and conditions of

employment as those that she had enjoyed before taking medical leave. Rather, defendant concedes that on the very same day that Weth returned, he told her that she would be permitted to continue to hold the title of Deputy Treasurer for Litigation, but then immediately stripped her of her former duties and responsibilities and told her to start looking for work elsewhere. See Def.'s Br. in Opp. to Pl.'s Mot. for Partial Summ. J. [Dkt. No. 55] at 8 ("Defendants concede that they did not restore Ms. Weth to her prior job upon her return to the office on February 16, 2010."). Such conduct is clearly a prima facie violation of 29 U.S.C. § 2614(a)(1) and 29 C.F.R. § 825.215.

Defendant argues, however, that plaintiff is not entitled to summary judgment on that theory of FMLA liability because she did not specifically allege a separate "interference" FMLA claim pursuant to 29 U.S.C. § 2614(a)(1) in her Complaint. That argument is unpersuasive, because, as noted above, Count I of plaintiff's Amended Complaint is explicitly entitled "Count One – Retaliation *and Interference* with Rights Granted by the Family and Medical Leave Act." Pl.'s Amend. Compl. at 12 (emphasis added); see also id. ¶ 88 ("Under the FMLA, the [defendant] was obligated to provide [Weth] her job, or an equivalent position, upon her return."). Furthermore, the factual allegations in Weth's Amended Complaint clearly support such allegations of FMLA interference liability. See, e.g., Pl.'s Amend. Compl. ¶¶ 58-59. O'Leary therefore has no basis for claiming that he was unaware that

23

plaintiff was pursuing an interference theory of liability under 29 U.S.C. § 2614(a)(1), and his arguments to the contrary all privilege form over substance.

Turning to the merits of the interference claim, defendant contends that summary judgment is inappropriate because although the FMLA creates a general right to restoration or reinstatement upon an employee's return from FMLA leave, it also grants the employee no greater rights than she would have had absent the FMLA-guaranteed leave. Specifically, 29 U.S.C. § 2614(a)(3) states that:

> Nothing in this section shall be construed to entitle any restored employee to –
>
> . . .
>
> (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

U.S.C. § 2614(a)(3). Relying on that provision, defendant argues that he is not liable under the FMLA because the evidence suggests that Weth would have had her job duties curtailed and eventually been terminated for cause even had she not taken medical leave. See Def.'s Br. in Opp. to Pl.'s Mot. for Partial Summ. J. at 6-9.

However, the primary Fourth Circuit authority that defendant cites, Yashenko v. Harrah's N.C. Casino Co., 446 F.3d 541, 546 (4th Cir. 2006), is not quite on all fours with this particular factual situation. Yashenko dealt with a plaintiff who brought an FMLA interference claim, alleging that he had an absolute right to

24

be restored to his previous position despite the elimination of
that position in a restructuring while the employee was on leave.
The Fourth Circuit disagreed, holding that plaintiff had no right
to reinstatement in his former position upon his return, given
that the job would apparently have been eliminated for legitimate
business reasons even had the employee not taken FMLA leave. Id.
at 547-49; see also Cscicsmann v. Sallada, 211 Fed. Appx. 163,
165-66 (4th Cir. 2006) (finding no violation of the restoration
requirement when the plaintiff sought reinstatement to his former
position, which had been eliminated due to a merger with another
company). Such situations are fundamentally different from the
instant case, where plaintiff's position as Deputy Treasurer of
Litigation was never eliminated, and plaintiff was in fact
permitted to retain that title upon her return from FMLA leave,
but was simply told that she would no longer be permitted to
perform the bulk of the duties that previously accompanied the
position.

Defendants' efforts to counter plaintiff's Motion for Partial
Summary Judgment therefore largely miss the mark, and often
confuse arguments relevant to plaintiff's FMLA retaliation claim
with those relating to her interference claim. At bottom,
however, FMLA liability under *either* theory of relief is
appropriate only if the employer took some action to interfere
with or deny an employee's FMLA rights, or to retaliate or
discriminate against the employee for taking FMLA leave. As such,

if the employer would have taken the same exact action in the absence of the employee ever taking leave, then FMLA liability is self-evidently misplaced. See U.S.C. § 2614(a)(3)(B); see also 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.").

Despite the factual differences with the case at bar, therefore, the Fourth Circuit's broad language in Yashenko could plausibly be read to support the proposition that FMLA interference claims, just like FMLA retaliation claims, are not viable if an employee was denied reinstatement to her former position as a result of performance-based issues entirely unrelated to the taking of medical leave. See, e.g., Yashenko, 446 F.3d at 547 ("We join our sister circuits in concluding that the FMLA does not require an employee to be restored to his prior job after FMLA leave if he would have been discharged had he not taken leave."); see also id. at 548 ("[A]n employer may deny restoration when it can show that it would have discharged the employee in any event regardless of the leave."). Moreover, because some of Weth's job responsibilities had apparently already been curtailed even before she took leave,[5] defendant is entitled

---

[5] Specifically, in the fall of 2008, O'Leary took away Weth's responsibility to sue delinquent taxpayers, reassigning that responsibility to Carla de la Pava. See Def.'s Mot. for Summ. J. [Dkt. No. 51] at Ex. C (de la Pava Dep.) at 20:7-22.

to attempt to rebut plaintiff's interference allegations under 29 U.S.C. § 2614(a)(1) by introducing evidence to suggest that Weth would have been stripped of the same job duties and responsibilities even if she had not taken FMLA leave.

Ultimately, therefore, for the same reasons explained below in connection with plaintiff's FMLA retaliation claim, genuine factual disputes preclude the entry of summary judgment for either party on plaintiff's FMLA interference claim, and this civil action will proceed to trial on that claim.

### b. FMLA retaliation claim

Finally, defendant's Motion for Summary Judgment on plaintiff's FMLA retaliation claim will be denied because genuine disputes of material fact likewise preclude the award of summary judgment on that claim. As such, the FMLA retaliation claim will also proceed to trial.

. To state a viable claim for retaliation in violation of the FMLA, 29 U.S.C. § 2614(a)(2), a plaintiff-employee must show that: (1) the employee engaged in a protected activity, such as taking FMLA leave; (2) the employer then took an adverse employment action against her; and (3) the adverse action was causally connected to the plaintiff's protected activity. <u>Yashenko</u>, 446 F.3d at 551. The Fourth Circuit has held where there is no direct

He also removed some of Weth non-federal legislation duties at that same time, <u>id.</u>, and stripped her of the responsibility to develop certain bankruptcy and litigation modules, <u>see</u> <u>id.</u> at 243:9-17.

27

evidence of FMLA retaliation, the indirect method of proof known
as the "McDonnell Douglas" framework, derived from McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973), applies.
Under that framework, the plaintiff must first establish a prima
facie case for unlawful retaliation, whereupon the burden of
production shifts to the defendant to rebut the presumption of
discrimination by proffering a legitimate, non-discriminatory
reason for the adverse employment action.  See, e.g., Holland v.
Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007) (applying the
McDonnell Douglas framework in a Title VII case).  Once the
employer has done so, the plaintiff then bears the ultimate burden
of persuasion to establish that the employer's proffered
explanation was merely a pretext for unlawful retaliation.  See
Yashenko, 446 F.3d at 551.

      Here, Weth has clearly made out a prima facie case for FMLA
retaliation by showing that, on the exact same day that she
returned from medical leave, she had her job responsibilities
stripped and was told that she needed to begin looking for a new
job immediately.  However, O'Leary has also proffered a number of
neutral, non-discriminatory reasons for those actions, as well as
for his ultimate decision to terminate Weth.  Specifically, there
is evidence in the record that O'Leary was dissatisfied with
various aspects of plaintiff's performance, including the handling
of a Taxpayer Assistance Program ("TAP") that allows taxpayers to
borrow money to pay their taxes, the drafting of an ordinance

                                28

designed to increase the interest rate on delinquent taxes to 10%,
the sales of taxpayer properties to satisfy delinquent real estate
taxes, and the negotiation and signing of a contract between the
Treasurer's office and the N. Harris Computer Corporation. See,
e.g., Br. in Supp. of Def.'s Mot. for Summ. J. at ¶¶ 10-69.
Moreover, even before Weth took FMLA leave, O'Leary had already
reassigned certain litigation, collection, and contract
responsibilities away from her and to other employees in the
office, purportedly because he believed that Weth was taking too
long to complete them or was otherwise not performing those
responsibilities to his satisfaction. Id. Finally, O'Leary has
submitted declarations and deposition testimony from a number of
Weth's co-workers, who confirm that they and O'Leary had concerns
about Weth's performance, availability, and reliability even
before she took medical leave. See id. at Exs. A-F; I-K. Taken
together, the evidence submitted by defendant therefore provides a
legitimate, non-discriminatory justification for Weth's
termination.

However, summary judgment is inappropriate in favor of the
defendant at this time because plaintiff's proffered evidence
gives rise to a genuine dispute of material fact as to whether
Weth's alleged performance problems were really just a pretext for
her termination in retaliation for exercising her right to FMLA
leave. In particular, contrary to O'Leary's assertions that he
had been dissatisfied with Weth's performance for years and had

29

already decided to terminate her before she took leave, plaintiff has submitted a number of performance evaluations from as late as 2009 in which she received highly positive reviews of her work. See Pl.'s Opp. to Def.'s Mot. for Summ. J. at Exs. 3-4 (Planning, Development, and Appraisal Forms for Weth, primarily awarding Weth 4's and 5's on a performance scale of 1 through 5).[6] Additionally, defendant approved several salary increases for plaintiff during her time as his employee. See id. at Ex. 15. (Def.'s Dep.) at 95:7-9, 99:14-21. Under governing Fourth Circuit precedent, those prior raises and satisfactory performance evaluations can be considered evidence that a more recent claim of poor performance is merely a pretext for discrimination. See EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 408-09 (4th Cir. 2005); see also Worldwide Network Servs., LLC v. Dyncorp Int'l, 365 Fed. Appx. 432 (4th Cir. 2010).

Finally, the timeline in this case is highly suspicious; O'Leary's decision to tell Weth on the very same day that she returned from FMLA leave that she was effectively demoted, and also that she would eventually be terminated and should seek new employment immediately, gives rise to a strong inference of FMLA-based discrimination, such that a reasonable jury could easily

[6] Defendant claims that he never read those performance appraisals before he signed and approved them, but the credibility of that assertion must be weighed by the finder of fact, particularly given that the appraisals were to be provided to the State Compensation Board.

find for the plaintiff. As such, this civil action must proceed to trial, where a jury can evaluate the ultimate merits of plaintiff's FMLA claims with the aid of live testimony.

### IV. Conclusion

For all these reasons, the Motion for Summary Judgment by defendant Francis X. O'Leary, Arlington County Treasurer [Dkt. No. 49] will be granted, the Motion for Partial Summary Judgment by plaintiff [Dkt. No. 47] will be denied, and the Motion for Summary Judgment by defendant Francis X. O'Leary, in his individual capacity [Dkt. No. 51], will be granted in part and denied in part by an Order to be issued with this Memorandum Opinion.

Entered this __11th__ day of July, 2011.

Alexandria, Virginia

_/s/_

**Leonie M. Brinkema**
**United States District Judge**